[Crim. No. 12241.   Second Dist., Div. Five.   Feb. 2, 1967.]

In re LJUBOMIR TOM GROSSI on Habeas Corpus.

Gilbert F. Nelson, under appointment by the Court of Appeal, for Petitioner.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Stanton Price, Deputy Attorney General, for Respondent.

KAUS, P. J.—Petitioner seeks release from confinement at Folsom Prison[1] on the ground that the conviction under which he is deprived of his liberty was obtained in a prosecution which violated the "multiple prosecution" aspect of section 654 of the Penal Code. (*Kellett* v. *Superior Court,* 63 Cal.2d 882 [48 Cal.Rptr. 366, 409 P.2d 206].)

The facts appear from the transcripts of the preliminary hearing in the two prosecutions involved, the two superior court files of which we take judicial notice (Evid. Code, § 452, subdivisions (c) and (d)),[2] those allegations of the petition which are not traversed and in an uncontradicted affidavit of a member of the Bar who was the deputy district attorney involved in the first prosecution, which affidavit is attached not only to the petition but also to the return. They are as follows:

At about 7:45 p.m. on August 31, 1963, in Inglewood, petitioner robbed a gas station attendant of about $120 in bills and change. In connection with the robbery he used a .38 caliber Smith & Wesson blue steel revolver. He was driving a Plymouth automobile and wearing a grey suit.

Shortly before midnight that day Officers Dolson and Vitali, who were apparently on routine patrol, observed petitioner fail to give the right-of-way to a pedestrian. The

[1]The petition was filed in the Supreme Court and transferred to this court for hearing.

[2]The parties were duly notified under the provisions of section 459, subdivisions (c) and (d) of the Evidence Code that this court proposed to notice the documents in question.

officers pursued petitioner who did not respond to their red light and siren. Petitioner picked up speed attempting to elude the officers through side streets, eventually sideswiped a parked car, got out of the Plymouth and attempted to flee on foot. The officers gave chase and after about 75 yards defendant threw up his hands and said ''I give up.'' He was arrested, the gun which he had used in the robbery was in the glove compartment of his car, the suit he had been wearing in the robbery was found on the back seat of the car. A search of the suit produced about $79 in bills and change.[3]

On September 6, 1963 a complaint was filed in the municipal court charging petitioner with armed robbery (Pen. Code, § 211) and a violation of section 12021 of the Penal Code (possession of a concealable firearm by an ex-felon). The same weapon was specified as to each charge. After a preliminary hearing a two count information was filed in the superior court on September 25 and the matter came on for hearing on October 28.

The events of October 28 are described in the deputy district attorney's affidavit which we quote in full: ''Affiant declares: That he was employed on October 28, 1963 as a Deputy District Attorney for the County of Los Angeles, assigned to the Inglewood branch of the District Attorney's Office. That on October 22, 1963, the above entitled action was set for trial and affiant represented the People of the State of California as Calendar Deputy District Attorney in Inglewood Superior Court, Southwest 'B'. That the Court Calendar was of such a condition the matter could not be tried and was continued to October 28, 1963, and reset for trial. That the People of the State of California had the victim of the alleged robbery, Gary Douglas Miller, under subpoena and in Court on October 22, 1963. That at the time of the continuance of trial, the Court ordered all witnesses to return without subpoena for the trial set October 28, 1963.

''That prior to October 28, 1963, affiant received a call from either the investigating officer in this matter or the victim, Gary Douglas Miller. The substance of the call was

---

[3]At the first preliminary hearing the victim of the robbery had testified that the car defendant was driving at that time was a white station wagon, either a Plymouth or a Dodge. One of the officers testified that the car which defendant was driving was a two-door Plymouth sedan, ''very light tan'' in color. The victim repeated his testimony at the second preliminary hearing, adding that he thought the year was 1960. The police testimony was again to the effect that the car which petitioner had been driving just before the arrest was a tan Plymouth sedan. The year given was 1963.

that Mr. Miller was attending High School at a location approximately two blocks from the Courthouse and because of this, a request was made to place the witness on call and this request was granted by affiant.

"That on October 28, 1963, affiant was again acting as a representative for the People of the State of California in the capacity of Calendar Deputy District Attorney for the Master Criminal Court, Inglewood, Southwest 'B'. The matter of 'People of the State of California, Plaintiff-vs-Ljubomir Tom Grossi' was called by the Court and affiant requested the investigating officer to contact the victim, Mr. Miller, and have him come to Court to testify. That the officer, upon calling the school, ascertained that the victim either had not been to school that day or had been to school and left the school to go to the hospital because of an accident. That the Court recalled the above case and affiant informed the Court of the witness situation and requested a short continuance to locate the missing essential witness. That the Honorable Kurtz Kauffman, Judge Presiding, refused affiant's request for a continuance and stated that the Court was disposed to dismiss the matter for lack of prosecution.

"That affiant and Mr. Grossi's attorney of record, Public Defender Alvin B. Calof, asked for a recess in order to talk further with the Presiding Judge. That a recess was granted and affiant, Judge Kauffman and Mr. Calof met in Chambers primarily so that affiant could again request a short continuance. That the Court again indicated that the matter would be dismissed unless some immediate disposition could be made of the case. That after further discussion, affiant decided to accept a plea to Count II of the Information, violation of California Penal Code 12021, possession of a weapon by an ex-convict. Affiant felt that some type of disposition was better than having the matter dismissed and refiled. That after discussing the matter with Defendant's counsel, Mr. Calof, an agreement was reached to accept the plea to the count mentioned and dismiss the first count of the Information charging the Defendant with armed robbery, and also to dismiss the four prior felony convictions alleged in the case. The above was accomplished and Defendant was immediately sentenced to one year in the County jail, a misdemeanor under California laws.

"Affiant completed the remainder of the Court session and thereupon returned to the District Attorney's Office and

reported this incident to affiant's superior who was in charge of the Inglewood Branch of the District Attorney's Office. Affiant's superior officer felt that the Court was unjustified in its demanding a disposition of the case or a dismissal thereof, and ordered that the armed robbery charge be refiled. That the refiling was accomplished charging the Defendant with one count of armed robbery. Affiant had no further dealings with the Defendant in any capacity.''

The second prosecution resulted in a jury verdict finding petitioner guilty and he was sentenced to state prison.

The probation report which was before the trial judge at the time of sentence and which had been read by the deputy public defender at the time sentence was pronounced[4] contained the following:

''Adult History:

. . . . . . . . . . . . . . .
''9-6-63 Sola—robbery (armed) and possession of firearms by felon—pled guilty to 12021 PC (ex-con with a gun) —sentenced six months county jail. This arrest also refers to the present offense.

. . . . . . . . . . . . . .
''It is to be noted that as a result of the present arrest, the defendant had previously appeared in the Los Angeles Superior Court (case number 278869) on charges of 211 PC (robbery) and 12021 PC (ex-con with a gun). The charge of robbery against the defendant was dismissed but the defendant pled guilty to the second count of ex-con with a gun. The defendant was sentenced to one year in the county jail which he is now serving. The present offense is a refiling of the aforementioned robbery charge.''

There is no indication that anybody, judge, prosecutor or defense counsel was in the slightest bit perturbed by the fact that defendant was possibly being subjected to multiple prosecutions.[5]

There was no appeal from the robbery conviction. About a year and a half later, on September 23, 1965, petitioner filed a document in the superior court entitled ''Motion to Vacate Judgment and Sentence.'' The burden of that application

---

[4]This we gather from a colloquy between court and counsel, concerning petitioner's past and the probation officer's recommendation.

[5]The judge, who refused the continuance, accepted the guilty plea, dismissed the robbery count and pronounced judgment in the first prosecution, did not participate in the second one at any stage. A different deputy from the office of the public defender represented petitioner at the second trial.

was that his conviction in the robbery case was illegal, because the judgment in the first prosecution had placed him in jeopardy as far as the robbery is concerned. The motion was summarily denied about a week later on the authority of *People* v. *Warren,* 16 Cal.2d 103 [104 P.2d 1024]. Petitioner appealed that denial to this court. Eventually Gilbert Nelson, Esq., was appointed to represent petitioner on the appeal. It appears that Mr. Nelson wisely decided that pursuit of the appeal will not benefit his client, but that the relief he seeks can more appropriately be granted by a writ of habeas corpus.

Two legal problems confront us. They are:

1. Assuming that there has been a multiple prosecution violative of section 654 of the Penal Code, can the point be raised in the present proceedings although it was not raised at the trial level or on an appeal from the judgment?[6]

2. Does the record before us demonstrate that there has been a multiple prosecution?

### *Availability of Habeas Corpus.*

As shown, both the court and the public defender knew sometime before the judgment was pronounced that in an earlier prosecution petitioner had pleaded guilty to an offense which had been joined with the robbery count and which prosecution, according to the probation report, had resulted from the same arrest. Yet the question of multiple prosecution was never raised. It appears to us that if respondent would dispute the availability of the writ, he is in a dilemma: either the failure of the public defender to make a motion which should have resulted in an immediate dismissal of the charge is such a lack of diligence that it is equivalent to a denial of counsel (*People* v. *Ibarra,* 60 Cal.2d 460, 464-466 [34 Cal.Rptr. 863, 386 P.2d 487])—in which case the writ is available (*In re James,* 38 Cal.2d 302, 309-310 [240 P.2d 596])—or *Kellett* v. *Superior Court,* 63 Cal.2d 822 [48 Cal.Rptr. 366, 409 P.2d 206], decided much later, so drastically changed the law that the failure to make a record at the trial is excusable under the principle recognized in *In re Woods,* 64 Cal.2d 3, 7-8 [48 Cal.Rptr. 689, 409 P.2d 913]: "Neither petitioner nor his then counsel can be held

---

[6]As noted above, no such appeal was ever taken. The appeal from the "motion to vacate judgment and sentence" cannot serve as a substitute for an appeal from the judgment, as counsel for petitioner realizes. (*People* v. *Thomas,* 52 Cal.2d 521, 527 [342 P.2d 889].)

accountable for failing to raise objections which could only be sustained by reference to cases yet to be determined.''

Nor is petitioner barred by lack of diligence.[7] It is obvious that he did not know about the possible application of section 654 to his situation at the time of the trial and it is equally obvious that he never did learn of it. In the ''motion to vacate judgment and sentence'' he relies exclusively on double jeopardy, which has nothing to do with the case. Section 654 was not mentioned by anyone until Mr. Nelson was appointed to represent petitioner on his appeal from the denial of the motion. We are thus free to consider the merits of the petition.

### Was There a Multiple Prosecution?

In the Supreme Court's opinion in *Kellett* v. *Superior Court*, 63 Cal.2d 822, 827 [48 Cal.Rptr. 366, 409 P.2d 206] the test for a solution of the question whether there have been multiple prosecutions is laid down as follows: ''When, as here, the prosecution is or should be aware of more than one offense in which the same act or course of conduct plays a significant part, all such offenses must be prosecuted in a single proceeding unless joinder is prohibited or severance permitted for good cause. Failure to unite all such offenses will result in a bar to subsequent prosecution of any offense omitted if the initial proceedings culminate in either acquittal or conviction and sentence.''

We would have little trouble in holding that this test is amply met by the facts of this case, were it not clear from the record that petitioner was observed in possession of the weapon both at the time of the robbery and at the time of the arrest several hours later. This enables respondent to argue that the two offenses were separate and distinct acts and that there was no indivisible course of conduct.

We think that the argument that there was more than one course of conduct is entirely speculative. The record before us fairly reeks of a single course of conduct, indivisible for the purpose of section 654.[8] To be sure, between the time of

---

[7] In *In re James*, 38 Cal.2d 302, 309 [240 P.2d 596] the Supreme Court considers the question whether the strict requirement of diligence is a prerequisite of a writ of habeas corpus an open one. Very recently in *In re Perez*, 65 Cal.2d 224, 228 [53 Cal.Rptr. 414, 418 P.2d 6], a habeas corpus proceeding, the court answered the Attorney General's argument that there had been a lack of diligence simply by holding that the petition showed that Perez had been diligent.

[8] The People did not hesitate to join the two counts in the first prosecution. The only clause of section 954 which would have made such joinder

the robbery and the time of the arrest defendant might have done whatever it takes to start a new course of conduct, but there is nothing in the record to support such a hypothesis.[9]

The writ is granted and the judgment in superior court action number 281141 is vacated and set aside. The record before us does not disclose whether petitioner has completed the county jail sentence imposed in case number 278869. If not, the incarceration in the county jail was interrupted by the second prosecution which should never have been started and it would be a travesty on justice if the time he spent in the state prison were "dead time" as far as the county jail sentence is concerned. Petitioner is therefore ordered released from all restraints on his liberty by virtue of the prosecutions in cases number 278869 and 281141.

Hufstedler, J., and Stephens, J., concurred.

---

permissible is the one referring to "different offenses connected together in their commission." Without suggesting that the test for permissible joinder under that clause of section 954 is necessarily the same as the test for impermissible multiple prosecution under section 654, we think that the point has some significance.

[9]Compare *People* v. *Kehoe,* 33 Cal.2d 711, 715 [204 P.2d 321]. There the defendant was charged with violating section 487 of the Penal Code (grand theft) and section 503 (now section 10851) of the Vehicle Code on or about the same day in Humboldt County. In rejecting the People's argument that double punishment was justified because the defendant was not arrested for several days after he stole the car, the court said: "But the information charged that each offense was committed on or about the same day in Humboldt County, and *in the absence of any evidence showing a substantial break between Kehoe's taking and his use of the automobile in that county,* only the conviction for one offense may be sustained." (*Ibid.,* p. 715, italics added.)