[Crim. No. 4004. Fourth Dist., Div. Two. Oct. 8, 1970.]

THE PEOPLE, Plaintiff and Appellant, v.
ROBERT FRED HARTFIELD, Defendant and Respondent.

COUNSEL

Cecil Hicks, District Attorney, Michael R. Capizzi and Oretta D. Sears, Deputy District Attorneys, for Plaintiff and Appellant.

Launer, Chaffee & Hanna and Steven L. Rothrock and Garald J. Orman for Defendant and Respondent.

OPINION

KAUFMAN, J.—The sole problem presented by this appeal is whether the court below properly dismissed felony charges against defendant pursuant to Penal Code, section 654,[1] from which dismissal the People appeal. The problem arises out of the following facts.

On June 1, 1969, Officer Hopper of the Garden Grove Police Department was instructed by radio to proceed to the site of the Strawberry Festival in Westminster in connection with a riot. After his arrival upon the scene, he joined with a group of officers of the Westminster Police Department, one of whom was Officer Miller. The officers were in uniform and were engaged in performing their duties in connection with the disturbance.

At about 10:30 p.m. defendant was driving a Volkswagen automobile that was identified by Officer Miller as having earlier been at the scene of a suspected arson. The officers decided to stop the vehicle and talk to the driver. Officer Hopper got in front of the vehicle as it was stopped at the intersection of Bushard Street and Westminster Boulevard. Officer Miller was standing at the left front of the vehicle with his foot on the bumper of the Volkswagen. Officer Hopper told defendant to move the vehicle onto Bushard Street at the side of the road and backed up to permit the defendant to do so. Defendant drove the vehicle directly toward Officer Hopper rather than toward the side of the road but stopped upon the instruction of Officer Hopper to do so. Officer Hopper then instructed defendant to "go over to the side of the road." Instead, however, defendant started up the vehicle at a

---

[1]The pertinent portion of Penal Code, section 654 reads: "An act or omission which is made punishable in different ways by different provisions of this code may be punished under either of such provisions, but in no case can it be punished under more than one; an acquittal or conviction and sentence under either one bars a prosecution for the same act or omission under any other."

high rate of speed, moving directly at Officer Hopper and struck him in the legs. Officer Hopper landed on the hood of the vehicle, slid to the side and off the vehicle. Happily, he was not injured. The point of impact was on Bushard Street about 30 to 40 feet south of its intersection with Westminster Boulevard. Defendant continued southbound on Bushard Street at a high rate of speed.

Officer Miller, who had observed the Volkswagen strike Officer Hopper, gave chase in a Cadillac automobile which had no police markings on it. The record does not disclose who was driving the Cadillac nor to whom it belonged. Officer Miller was in the back seat. Officer Miller observed defendant cross over the centerline of Bushard Street; pass a Corvette, causing a fire engine with red lights and activated siren to apply its brakes; cut in front of the Corvette, causing it to apply its brakes; straddle the center of the street in order to prevent the pursuing Cadillac from passing; go through a stop sign at the intersection of Bushard and Hazard at about 35 to 40 miles per hour and make a righthand turn without slowing down; and proceed down Hazard Avenue at about 50 to 55 miles per hour. The pursuing Cadillac then got ahead of defendant's vehicle, whereupon defendant moved to the wrong side of the roadway over a center double yellow line, made an illegal U-turn to the right and headed right into two oncoming cars. Defendant slammed on his brakes, stopping about 3 feet from the oncoming cars and backed into the Cadillac, which had pulled in behind defendant's vehicle. The vehicles were then something more than one-half mile from the intersection of Westminster Boulevard and Bushard Street.

On the scene, Officer Miller, who it will be remembered was a member of the Westminster Police Department, cited defendant for a violation of Vehicle Code, section 23103, reckless driving, on a "Notice To Appear" form of the City of Westminster. In a space labeled "Location of Violation" the officer printed "Westminster + Bushard + Hazard." In a space labeled "Approx. Speed" the officer put "20 - 60." In a space labeled "Safe Speed" the officer put "40."

The citation required defendant to appear before the Municipal Court of the West Orange County Judicial District on June 16, 1969. On that date, defendant appeared in said court without counsel, entered a plea of not guilty and requested a jury trial. The trial date was set for July 15, 1969. There is no evidence in the record that the People were represented at this proceeding.

In the meantime, pursuant to a preliminary examination in another department of the municipal court on June 13, 1969, an information was filed

on June 27, 1969 in the Orange County Superior Court charging defendant in count I with assault with a deadly weapon upon the person of a peace officer (Pen. Code, § 245, subd. (b)), in count II with willful failure to stop and render assistance (Veh. Code, § 20001), and in count III battery upon the person of a peace officer (Pen. Code, § 243). On July 11, 1969, defendant appeared in the Orange County Superior Court for arraignment on the information. He was represented at the arraignment by his attorney, Mr. Orman. Defendant pleaded not guilty, waived the statutory time for trial and demanded a trial by jury, which was set for September 22, 1969. Pretrial proceedings were set for September 16, 1969.

On July 15, 1969, at 8:30 a.m., the time set for trial of the reckless driving charge, defendant appeared in the municipal court without counsel. The case was trailed to 1:30 p.m. on that date. At 1:30 p.m. defendant again appeared, this time with his attorney, Mr. Orman; withdrew his plea of guilty; entered a guilty plea to reckless driving; and waived the statutory time for pronouncement of judgment. The case was continued for pronouncement of judgment to October 30, 1969, at 9 a.m. The record does not satisfactorily disclose whether the People were represented in the municipal court proceedings on July 15. In each instance, the court's minutes, consisting of a form made by impression from a rubber stamp, reflect "People represented by District Attorney ————————————."

On September 16, 1969, defendant and his attorney appeared in the superior court where the pretrial proceedings in the felony matter were ordered off calendar at the request of defendant's counsel.

Two days later, on September 18, 1969, four days before the date scheduled for trial of the felony charges and approximately six weeks before the date theretofore set for pronouncement of judgment in the misdemeanor case, defendant and his attorney Mr. Orman appeared in the municipal court and, it must be inferred, had the pronouncement of judgment advanced on the calendar. Defendant was sentenced to 30 days in the county jail, suspended, and he was placed on one year's summary probation subject to certain conditions including serving 15 days in the county jail or the payment of a fine and penalty assessment in the amount of $186. Defendant paid the fine. That same day, defendant obtained from the municipal court a certified copy of its minute sheets and the probation order pertaining to the misdemeanor proceedings. There is nothing in the record indicating that the district attorney was represented at the pronouncement of judgment or was notified of its advancement on calendar.

On September 22, 1969, the date scheduled for trial of the felony charges, defendant, with his attorney, Mr. Orman, appeared and moved the superior

court to dismiss the felony charges on the ground that their prosecution was barred under Penal Code, section 654 by defendant's plea and sentence in the misdemeanor case. A hearing was had in which defendant offered into evidence the certified copy of the minute sheet and probation order of the municipal court obtained on September 18, together with a certified copy of the "Notice To Appear," the certification to which bears the date September 22, 1969. It was stipulated that the reporter's transcript of the preliminary hearing should be received and considered by the court, and Officer Miller was sworn and testified. At the conclusion of the hearing the district attorney agreed to the dismissal of count II inasmuch as he had ascertained that he would not be able to adduce evidence that Officer Hopper was injured when struck by defendant's vehicle. The court granted defendant's motion to dismiss counts I and III, believing itself compelled to do so by Penal Code, section 654.

*Analysis*

Even were we required to enter into the labyrinthic determination of whether defendant's reckless driving constituted the "same act or omission" as that supporting the felony charges,[2] we should not be inclined to find it the "same." Obviously, defendant's conduct consisted of a series of acts or omissions, and the question would be whether they constituted a "divisible transaction." (*Neal* v. *State of California,* 55 Cal.2d 11, 19 [9 Cal.Rptr. 607, 357 P.2d 839]; *People* v. *Brown,* 49 Cal.2d 577, 591 [320 P.2d 5].) "Where the question is whether a transaction is divisible or indivisible, each case must be resolved on its own facts." (*People* v. *Brown, supra.*) The rule against multiple prosecution found in section 654 is a procedural safeguard against harassment by the government of persons accused of crime. (*Kellett* v. *Superior Court,* 63 Cal.2d 822, 825 [48 Cal.Rptr. 366, 409 P.2d 206]; *Neal* v. *State of California, supra,* at p. 21.) As will hereinafter appear, there is no harassment of defendant in this case except such as may be said to result from his own conduct, and, in view of the statutory purpose we should have great reluctance to find the two prosecutions for the "same act or omission."

The tests heretofore articulated as tools to be used in resolving the problem are summarized in *In re Hayes,* 70 Cal.2d 604, 605-607 [75 Cal.Rptr. 790, 451 P.2d 430]. They are: the "necessarily included offense" test (see *People* v. *Knowles,* 35 Cal.2d 175, 186 [217 P.2d 1]; cf. *People* v. *Greer,*

[2]This problem has plagued our courts for years (see *People* v. *Morris,* 237 Cal App.2d 773 [47 Cal.Rptr. 253] (disapproved in part in *Hayes*); *In re Hayes,* 70 Cal.2d 604 [75 Cal.Rptr. 790, 451 P.2d 430] (original opinion reported at 69 Cal.Rptr. 310 [442 P.2d 366])) and the tests heretofore articulated for its resolution have been criticized as conflicting, ambiguous, unrelated to the statutory purposes and, largely, useless. (See 58 Cal.L.Rev. 357-390; see also Stanford L.Rev. 735-759.)

30 Cal.2d 589, 595 et seq. [184 P.2d 512]); the "intent and objective" test (*Neal* v. *State of California, supra,* 55 Cal.2d 11, 19; *Kellett* v. *Superior Court, supra,* 63 Cal.2d 822, 824-825; *People* v. *Bauer,* 1 Cal.3d 368, 376 [82 Cal.Rptr. 357, 461 P.2d 637]); and the "criminal acts" test enunciated in *Hayes* itself (70 Cal.2d at pp. 606-610).

For purposes of Penal Code, section 654, the offense of reckless driving would not appear to be an offense necessarily included in the offenses of battery upon the person of a peace officer or assault with a deadly weapon upon the person of a peace officer, inasmuch as the latter offenses can be committed without necessarily committing the former. (*Neal* v. *State of California, supra,* 55 Cal.2d 11, 18; *People* v. *Greer, supra,* 30 Cal.2d 589, 596-597; cf. also *In re Hayes, supra,* 70 Cal.2d 604; *People* v. *Herbert,* 6 Cal.2d 541 [58 P.2d 909]; *People* v. *Breland,* 243 Cal.App.2d 644 [52 Cal.Rptr. 696].)[3] Defendant points to the language in the reckless driving citation that the violation occurred on "Westminster + Bushard + Hazard," and urges that, inasmuch as his entire course of conduct in driving the vehicle as observed by Officer Miller was included therein, the conduct covered by the misdemeanor citation must have included the conduct upon which the felony charges are based. At the hearing on the motion to dismiss, the court sustained defendant's objections to Officer Miller's testifying to his subjective intent in issuing the citation. We note, however, that he indicated on the citation that defendant's speed was "20 - 60" and that the safe speed was "40." From this it would appear that Officer Miller could not have had in mind the striking of Officer Hopper in issuing the citation, because, obviously, the safe speed at the time the vehicle was driven directly at Officer Hopper could not have been 40 miles per hour.

We should not find the "intent and objective" test useful in this case. There is no way of knowing whether defendant first informed the intent to escape and struck the officer with the vehicle as a means of so doing or whether he formed the intention of running the officer down and afterward kept going to escape capture for that offense. Assuming his innocence of any complicity in the earlier arson incident, the latter possibility is as substantial as the former. We are confident that upon trial of the issue, defendant would contend that he had neither intent and that the striking of the officer was accidental.

Should we utilize the "criminal acts" test of *Hayes,* we think it inevitable that we should find two or more criminal acts. Defendant's argument that

---

[3]The possibility is not foreclosed that, under some circumstances, reckless driving might be an offense "necessarily included" within the meaning of and for purposes of section 1159 of the Penal Code depending upon the specific allegations in the accusatory pleadings or the evidence developed at the trial. (See *People* v. *Marshall,* 48 Cal.2d 394, 402-405 [309 P.2d 456].)

his driving of the vehicle constituted the same acts involved in the reckless driving and in the felony charges is the very argument made by the defendant in *Hayes* (70 Cal.2d at pp. 606-609) and rejected by the court. ■ Obviously, the mental element involved in reckless driving is different from that required for the offense of battery upon the person of a police officer or assault with a deadly weapon upon a peace officer (see *People* v. *Garcia,* 250 Cal.App.2d 15, 20-21 [58 Cal.Rptr. 186]), and the commission of the latter offenses depends on the status of the victim, i.e., that he is a peace officer in the performance of his duties (*People* v. *Soto,* 276 Cal.App.2d 81, 85 [80 Cal.Rptr. 627]). (See generally dissenting opinion of Whelan, J. in *People* v. *Morris, supra,* 237 Cal.App.2d 773, 782, et seq.)

■ The decision in this case, however, is governed by principles recognizing an exception to the successive prosecution prohibition of Penal Code, section 654, which was anticipated in *Kellett* v. *Superior Court, supra,* 63 Cal.2d 822, 827-828, noted in *In re Hayes, supra,* 70 Cal.2d 604, 610-611, fn. 11, and applied in *Hampton* v. *Municipal Court,* 242 Cal.App.2d 689 [51 Cal.Rptr. 760] and *Gail* v. *Municipal Court,* 251 Cal.App.2d 1005 [60 Cal.Rptr. 91]. The exception is best condensed in *Hayes.* "[W]here the issue is multiple prosecution, the provisions of section 654 cannot be employed to mislead the court. Thus, if a greater violation is concealed in order to gain 'immunity' by prosecution for a lesser crime, section 654 will not apply. [Citing *Kellett, supra; Gail, supra;* and *Hampton, supra.*]" (*In re Hayes, supra,* 70 Cal.2d 604, 610-611, fn. 11.)

The situation with which we are presented is this. Defendant is claiming the benefit of a statute designed to prevent harassment by the government of a criminally accused. Yet, here, both prosecutions were pending prior to the trial of either, and this was fully known to defendant, for the preliminary hearing of the felony case was held in his presence on June 13, three days before his first appearance in the municipal court on the misdemeanor charges. Defendant could at any time have avoided any harassment by moving for consolidation of the charges pursuant to Penal Code, section 954, which permits joinder of misdemeanor and felony charges in the superior court. (*Kellett* v. *Superior Court, supra,* 63 Cal.2d 822, 825.) This he chose not to do.

■ Even after he had pleaded guilty to the reckless driving charge on July 15, the felony prosecution was not prohibited, for, under the statute, successive prosecution is only prohibited after conviction *and sentence.* (Pen. Code, § 654, *supra; People* v. *Tideman,* 57 Cal.2d 574, 587 [21 Cal. Rptr. 207, 370 P.2d 1007].) In the normal course, trial of the felony charges

would not have been precluded, for trial had been set for September 22, and judgment in the misdemeanor case had not been pronounced and was not calendared for pronouncement until October 30. But, on September 18, with trial of the felony charges only four days away, defendant and his attorney appeared in the municipal court, had the pronouncement of judgment advanced on calendar and procured the pronouncement of judgment. That defendant did so for the express purpose of avoiding prosecution on the felony charges is demonstrated by the fact that on that same day he obtained certified copies of the municipal court's minute sheets and probation order for presentation to the superior court four days later. Undoubtedly, if defendant had disclosed to the court the pendency of the felony charges, the imminency of their trial and his purpose in requesting that the pronouncement of judgment be advanced on calendar, the court would have denied the advancement and withheld pronouncement of judgment pending trial of the felony charges. Further, there is nothing in the record indicating that the district attorney was notified of the advancement of the pronouncement of judgment on calendar or that he was represented at that proceeding.[4]

We recognize that the facts of the case at bench may not fall within the precise language of *Kellett* (63 Cal.2d 822, 827-828). We further recognize that, in the case at bench, there is ample evidence that defendant was guilty of reckless driving, whereas in *Hampton* and *Gail* the defendants pleaded guilty to an offense of which they knew they were not guilty. (*Gail* v. *Municipal Court, supra,* 251 Cal.App.2d 1005, 1008 (presumptive knowledge); *Hampton* v. *Municipal Court, supra,* 242 Cal.App.2d 689, 693 (actual knowledge).) ■ Nevertheless, in the case at bench the operative fact (pronouncement of judgment) giving rise to defendant's claim of harassment from double prosecution as prohibited by Penal Code, section 654 was procured by defendant himself by connivance and concealment, and he may not claim the benefit of the statute. (*In re Hayes, supra,* 70 Cal.2d 604, 610-

---

[4]In the briefs, defendant asserts that the Orange County District Attorney's office was responsible for prosecution of both the misdemeanor and the felony charges and that said office was fully aware of the pendency of both proceedings at all times. The only thing in the record indicating that the district attorney's office was in any way connected with the misdemeanor prosecution are the entries in the court's minutes, consisting of a form made by impression from a rubber stamp, in connection with defendant's two appearances on July 15 which read "People represented by District Attorney ————————————." If the district attorney's office was in fact represented on July 15, one would expect to find the name of the deputy written or printed in the blank space. On the other hand, the district attorney asserts that two different governmental entities filed the charges. This is borne out by the record only to the limited extent that the reckless driving citation is on a form of the City of Westminster. The record does not disclose what agency or person filed the complaint giving rise to the information. In any event, under the statute, the pronouncement of judgment is the operative fact which bars subsequent prosecution (*People* v. *Tideman, supra,* 57 Cal.2d 574, 587), and there is no indication in the court's minutes or elsewhere in the record that the district attorney was represented at that proceeding.

611, fn. 11; *Kellett* v. *Superior Court, supra,* 63 Cal.2d 822, 827-828; *Gail* v. *Municipal Court, supra,* 251 Cal.App.2d 1005, 1008; *Hampton* v. *Municipal Court, supra,* 242 Cal.App.2d 689, 693-695.)

The judgment is reversed insofar as it relates to counts I and III of the information.

Tamura, Acting P. J., and Kerrigan, J., concurred.

A petition for a rehearing was denied October 30, 1970, and the following opinion then rendered:

THE COURT.—Defendant has filed a petition for rehearing in which he asserts, among other things, that implicit in the case and in our disposition of the case is a problem of double *punishment* prohibited by Penal Code section 654, which, he urges, we failed to consider and failed to deal with in the opinion.

This contention is not meritorious. We did consider the problem but did not deal with it in the opinion, primarily because the issue is entirely speculative and premature. Unless and until defendant is convicted of one or more of the charges now pending and sentenced therefor, there is no double punishment problem. (*In re Ward,* 64 Cal.2d 672, 676-678 [51 Cal.Rptr. 272, 414 P.2d 400]; *In re Wright,* 65 Cal.2d 650, 653-656 [56 Cal.Rptr. 110, 422 P.2d 998]; *People* v. *Niles,* 227 Cal.App.2d 749, 756 [39 Cal.Rptr. 11].)

Should defendant be convicted of one or more of the charges now pending, and should the trial court determine that the act for which he is convicted was the same act or omission as that for which he was previously punished within the double punishment prohibition of Penal Code section 654, the trial court may satisfy the requirements of section 654 by following a procedure such as that employed in *People* v. *Breland,* 243 Cal.App.2d 644, 652 [52 Cal.Rptr. 696] cited in the opinion.

Respondent's petition for a hearing by the Supreme Court was denied December 3, 1970. Peters, J., was of the opinion that the petition should be granted.