[No. B008065. Second Dist., Div. Four. Mar. 8, 1985.]

TIMOTHY CRAYTON, Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
THE PEOPLE, Real Party in Interest.

COUNSEL

Wilbur F. Littlefield, Public Defender, Laurence M. Sarnoff, Margaret P. Scully and Ronald B. Davey, Deputy Public Defenders, for Petitioner.

No appearance for Respondent.

Ira Reiner, District Attorney, Donald J. Kaplan and Eugene D. Tavris, Deputy District Attorneys, for Real Party in Interest.

OPINION

WOODS, P. J.—By petition for writ of prohibition a felony defendant seeks to compel the trial court to dismiss a felony complaint on the ground that he has entered a plea of nolo contendere to and been sentenced upon a misdemeanor offense that arose out of the identical underlying criminal conduct now being prosecuted as a felony.

 The issue presented is whether a defendant, who has in no way manipulated prosecutorial procedures nor judicial proceedings to conceal the fact of dual prosecution, perpetrates a fraud upon the court by entering a guilty plea to misdemeanor charges without informing the court of the pending felony prosecution.

The critical question to be resolved is whether a defendant has an affirmative duty to volunteer the fact of dual prosecution to the court before entering a plea. The parties concede that this question has not been determined by any reported case.

The facts are simple and not in dispute.

On July 9, 1984, defendant was arrested and has since remained in custody.

A misdemeanor complaint was filed against defendant on July 12 charging violations of Penal Code sections 524 (attempted extortion) and 496 (receiving stolen property).[1] Defendant, represented by private counsel, was arraigned and entered a plea of not guilty. A settlement conference was set for July 23 and trial was set for July 31.

---

[1]The arrest report states that defendant attempted to extort $100 for the return of a stolen purse. He was arrested in the act of receiving the money.

On July 19, 1984, a felony complaint was filed charging defendant with extortion (Pen. Code, §§ 519, 520) and receiving stolen property. These felony charges arise out of the identical criminal conduct that was the subject of the misdemeanor complaint.[2]

On July 20 defendant, represented by a deputy public defender, was arraigned on the felony complaint and entered a plea of not guilty. Preliminary hearing was set for July 27.

On July 23 no disposition was reached at the misdemeanor settlement conference. On that date, the preliminary hearing in the felony proceedings in division III of the municipal court were continued by Judge Rex H. Minter to August 3 on defense motion because the deputy public defender assigned to defendant's case was otherwise engaged.

The docket sheet for the misdemeanor proceedings shows that on July 31 defendant appeared for trial in division III of the municipal court before Judge Henry E. Morse, Jr. Defendant, represented by private counsel, entered a plea of "no contest" to count I (attempted extortion, Pen. Code, § 524). Count II (receiving stolen property) was dismissed. Defendant was immediately sentenced to serve 23 days in jail and given presentence custody credit for 23 days served.

At the commencement of the preliminary hearing in the felony proceedings in division III on August 3, Judge Morse heard defendant's motion to dismiss on the ground that further felony prosecution would constitute double jeopardy in violation of his rights under the federal and California Constitutions.

In opposition to the motion, the deputy district attorney represented to the court that she had spoken personally with the deputy city attorney who took defendant's July 31 misdemeanor plea. She related that the deputy city attorney had not objected to the plea because she had omitted to take the case file to court on the July 31 trial date and had thus failed to see the "large note written in the file, 'Dismiss this case because felony proceedings are pending.'" Nothing in the record suggested that defendant knew of this omission by the deputy city attorney. The People did not so contend, and

---

[2]It was represented by the People in opposition to the motions to dismiss that the dual filings resulted from the initial refusal by the district attorney to file a felony complaint (allegedly due to lack of defendant's record) and a later determination to so file. In the interim, the police caused the city attorney to file the misdemeanor complaint. The police later caused a notation to be made in the city attorney's case file by the supervisor, sometime prior to July 31, advising of the commencement of the felony proceedings and admonishing against taking a plea on the misdemeanor charges.

they stipulated that the misdemeanor and felony prosecutions concerned the same underlying conduct by defendant.

The motion to dismiss was denied at the conclusion of the preliminary hearing. Defendant was held to answer on both counts.

On August 21 defendant was arraigned on the resulting information and entered pleas of "not guilty, once in jeopardy, and former judgment of conviction." Defendant filed a motion to dismiss on double jeopardy grounds. The People filed opposition. At the hearing on the motion, the People expressly disclaimed any contention that defendant's counsel in the misdemeanor prosecution had any knowledge of the related felony prosecution. They contended only that defendant himself had a duty to advise of the felony prosecution.

Neither the People nor defendant lodged the transcript of the July 31 plea proceedings in connection with the motion to dismiss. However, the People did not contend, nor was any evidence offered to show, that either defendant or his counsel knew prior to defendant's plea that the deputy city attorney did not consult the case file or that she was otherwise unaware of the pending felony prosecution.

The motion was denied. The court reasoned that defendant's failure to affirmatively disclose to the municipal court, at the time of entering his plea, that a felony prosecution was pending on the identical underlying conduct constituted a fraud abrogating double jeopardy protection. The court found that the two prosecutions concerned the same offenses by defendant.

I

In an effort to establish an affirmative duty of defendant to disclose dual prosecution, the People rely upon general language, contained in *dictum* in *In re Hayes* (1969) 70 Cal.2d 604, 610-611, footnote 11 [75 Cal.Rptr. 790, 451 P.2d 430], stating that "if a greater violation is concealed in order to gain 'immunity' by prosecution for a lesser crime, [Pen. Code] section 654 will not apply." However, neither *Hayes* nor the cases it cites for this general proposition (*Kellett* v. *Superior Court* (1966) 63 Cal.2d 822 [48 Cal.Rptr. 366, 409 P.2d 206]; *Gail* v. *Superior Court* (1967) 251 Cal.App.2d 1005 [60 Cal.Rptr. 91]; and *Hampton* v. *Municipal Court* (1966) 242 Cal.App.2d 689 [51 Cal.Rptr. 760]) involve conduct sufficiently similar to that in our case so as to require application of that rule here. Neither do other cases relied upon by the People indicate that defendant had a duty to volunteer information which the prosecution was responsible for

knowing and which was, in fact, prominently entered in the prosecution's case file.

*Hampton* v. *Municipal Court, supra,* concerned the Penal Code section 654 prohibition against multiple prosecution and punishment for a single act or course of conduct that might be prosecuted under more than one statute. There a driver was cited for driving without a license in his immediate possession (due to false representations to the arresting officer that he had a valid license). In fact his license had recently been revoked. After the People learned the true facts and filed appropriate charges, but prior to arraignment thereon, defendant, advised by counsel, pleaded guilty to the citation for the admitted purpose of avoiding prosecution for the more serious offense. It was held that defendant's true offense, driving when his license had been revoked, was punishable under only one statute, and thus his guilty plea to another (inappropriate) offense did not create a section 654 bar to subsequent prosecution. The court went on, in *dictum,* to state that even if section 654 had potential application under such facts, defendant's lesser "sham" conviction had been procured by "fraud," "connivance and collusion" that would abrogate the bar of section 654 or an analogous double jeopardy bar. (*Id.,* at pp. 693-695.)

In addition to the fact that the *Hampton* language upon which the People rely is dictum, the facts of that case are materially distinguishable. Defendant Hampton lied to the arresting officer and then knowingly pleaded guilty to the resulting inappropriate lesser charge, with knowledge and advice of counsel, to avoid prosecution on the more serious charge. Accordingly, it was manifest on the *Hampton* record that defendant actively perpetrated a fraud by precipitating prosecutorial misfiling and admittedly, upon advice of counsel, taking advantage of resulting prosecutorial ignorance.

*Gail* v. *Superior Court* (1967) 251 Cal.App.2d 1005 [60 Cal.Rptr. 91], involved facts materially identical to those in *Hampton* v. *Superior Court, supra,* 242 Cal.App.2d 689. *Gail* based its holding that Penal Code section 654 did not bar prosecution for the more serious offense directly on the ground that defendant's conduct perpetrated a fraud upon the court and precluded him from asserting that he may not be subjected to double punishment for the same act.

*Kellett* v. *Superior Court* (1966) 63 Cal.2d 822 [48 Cal.Rptr. 366, 409 P.2d 206], involved a convicted felon arrested for brandishing a firearm. After being held to answer on a felony information charging possession of a concealed weapon by a convicted felon, defendant entered a plea of guilty and was sentenced in a simultaneous misdemeanor prosecution for exhibiting a firearm in a threatening manner. Defendant then appeared in the felony

proceedings and moved unsuccessfully to dismiss under Penal Code section 654. The Supreme Court issued a peremptory writ of prohibition against further prosecution on the felony. The sole issue addressed by the court was whether a single act or course of conduct was involved which was punishable under the two statutes. The court determined only one act was involved and that section 654 barred the felony prosecution.

The *Kellett* court acknowledged the inherent risk of a section 654 bar where prosecutors fail to properly evaluate the seriousness of particular criminal conduct or where different agencies are responsible for prosecuting misdemeanors and felonies. It noted the possibility that "a well advised defendant may plead guilty to a misdemeanor to foreclose a subsequent felony prosecution." (63 Cal.2d at p. 828.) This discussion suggests that a defendant has no affirmative duty to advise the misdemeanor court of a pending or a potential future related felony prosecution. The burden is, instead, upon the prosecutorial agencies to carefully consider the seriousness of the criminal conduct and to file appropriate charges to foreclose the chance of a defendant avoiding "proper punishment." (*Id.*, at pp. 828-829.) There was, of course, no question of fraud in *Kellett*.

The People also rely upon *People* v. *Hartfield* (1970) 11 Cal.App.3d 1073 [90 Cal.Rptr. 274], as concerning a Penal Code section 654 multiple-prosecution issue analogous to the present double jeopardy issue. In *Hartfield*, defendant was driving by the scene of a riot and was asked by officers to pull to the side of the road. Instead he struck a police officer with his vehicle and fled. During the ensuing police pursuit defendant drove recklessly. He was cited for reckless driving, a misdemeanor. In a separate felony prosecution he was charged with assault upon a police officer with a deadly weapon, battery upon a police officer, and wilful failure to stop and render assistance. Defendant was represented by the same counsel in both proceeding. At the time of his trial on the misdemeanor, defendant entered a guilty plea and sentencing was set for a date *after* his trial date in the felony proceedings. Knowing that Penal Code section 654 could not preclude further felony proceedings until defendant was sentenced on the misdemeanor, defendant's *counsel* appeared ex parte and caused the misdemeanor sentencing to be advanced on calendar to a date prior to the felony trial. The record indicated that no prosecutor was notified of the advancement or was present at the pronouncement of sentence. At the felony trial, defendant moved to dismiss under Penal Code section 654, and the motion was granted. On appeal, the dismissal was reversed on the ground that the conduct of defendant's counsel rendered the misdemeanor sentencing "procured by defendant himself by connivance and concealment." While not relying upon the absence of a voluntary advisement of the felony proceeding by defendant's counsel at the misdemeanor sentencing as a critical fact, the *Hartfield*

court did comment that such an advisement would probably have prevented the early pronouncement of sentence.

The circumstances in *Hartfield* are closer to our case than are those in *Hampton, supra,* 242 Cal.App.2d 689, and *Gail, supra,* 251 Cal.App.2d 1005, but the affirmative conduct of defense counsel in *Hartfield* is still of a different character than the mere silence of the defendant here. Manifestly, the *Hartfield* defense counsel, an officer of the court, took affirmative steps to create a section 654 bar that would not have otherwise existed.

The People's reliance upon *People* v. *Woods* (1890) 84 Cal. 441 [23 P. 1119], is wholly misplaced. There defendant's counsel induced the trial court to vacate a felony judgment of conviction and permit defendant to plead to a misdemeanor by intentionally misrepresenting that the appellate court had reversed the felony conviction and indicated that insufficient evidence existed to establish the felony. The *Woods* court held that the trial court in fact had no jurisdiction to vacate the felony judgment of conviction (that judgment having been affirmed on appeal) or to enter the misdemeanor guilty plea. The plea was thus "null and void." (*Id.,* at p. 443.) Nowhere did *Woods* even imply that such affirmative misrepresentation of facts is equivalent to what real party terms "passive concealment."

*People* v. *McDaniels* (1902) 137 Cal. 192, 199 [69 P. 1006], is the final case upon which real party places primary reliance. However, *McDaniels* does not involve any facts raising a fraud issue and merely states the same general *dictum* as is set forth in *In re Hayes, supra,* 70 Cal.2d 604, 610-611, footnote 11.

Realizing that the discussed cases involve affirmative misrepresentations and do not necessarily compel a finding of fraud where defendant merely fails to volunteer information, the People turn to cases involving attorney discipline for intentional omission of material facts.

In *Di Sabatino* v. *State Bar* (1980) 27 Cal.3d 159 [162 Cal.Rptr. 458, 606 P.2d 765], an attorney was disciplined for failing to inform an after-hours bail magistrate that the attorney had made two unsuccessful bail reduction applications in the case earlier the same day. The failure was determined to constitute a "concealment of information which misled" the court. The court founded its holding upon the special statutory duty of attorneys (Bus. & Prof. Code, § 6068, subd. (d); Rules Prof. Conduct, rule 7-105) not to mislead a court. The court observed that "concealment of material facts is just as misleading as explicit false statements. . . ." (*Id.,* at pp. 162-163.)

The *Di Sabatino* case is distinguishable in that there was a statutory imposition of a duty directed exclusively toward attorneys. Further, counsel in that case actually engaged in an affirmative presentation of facts to obtain judicial action and concealed material facts of which he knew the magistrate was not otherwise aware. Under these circumstances, the making of affirmative representations itself created the duty to also disclose other material facts that counsel knew were unknown to the magistrate. (Civ. Code, § 1710, subd: 3.)

But more important to this discussion is the realization that the equation of passive concealment with affirmative misrepresentation to create a duty to disclose is circular reasoning. It ignores consideration of the prerequisite elements of fraud. ██ Specifically, the generally recognized rule is that absent an existing duty to volunteer information, and notice of such duty, mere failure to disclose does not constitute fraud. (34 Cal.Jur.3d, Fraud and Deceit, § 24, p. 590; 4 Witkin, Summary of Cal. Law (8th ed. 1974) Torts, §§ 459, 462, 464, pp. 2724-2727.)

Fraud, in the form of concealment, is defined in subdivision 3 of section 1710 of the Civil Code as "The suppression of a fact, *by one who is bound to disclose it, or who gives information of other facts* which are likely to mislead for want of communication of that fact. . . ." (Italics added.) The general rule is that misrepresentation by passive concealment (as opposed to affirmative concealment) violates a duty to disclose only where there is a special fiduciary relationship between the parties or where "the defendant has special knowledge, or means of knowledge, not open to the plaintiff, and is aware that the plaintiff is acting under a misapprehension as to facts which would be of importance to him, and would probably affect his decision." (Prosser on Torts (4th ed. 1971), Representation and Nondisclosure, § 106, p. 697.) Thus, affirmative misrepresentation creates a duty of full disclosure, while mere silence is not concealment unless a preexisting duty to disclose exists.

██ Applying these fundamental principles to the present criminal context, there appears to be no reasonable basis for charging a criminal defendant with the duty of second-guessing the prosecution's conduct or safeguarding against its malfeasance. The prosecution is charged with the exclusive responsibility of appropriately filing and coordinating multiple prosecutions for a single act or course of conduct. (*Kellett* v. *Superior Court, supra,* 63 Cal.2d at p. 828.) Presuming the regular performance of police and prosecutorial duties, it could well be assumed that the office of the city attorney was officially informed of the pending felony. It could also be assumed that the acquiesence by the deputy city attorney in the misdemeanor plea reflected an informed prosecutorial decision to allow the plea.

It is generally known that prosecutorial agencies usually have a policy not to accept a plea without consulting the case file. Prosecutorial agencies wherein different deputies are handling a large volume of cases daily must operate upon the basis of the case files. No reason is suggested why the prosecutor on July 31 could not have requested a later call on defendant's case in order to obtain the file.

In sum, there is no showing that defendant was on notice or believed that the city attorney was ignorant of the fact of dual prosecution.

A common defendant of unproven knowledge relative to criminal law and procedure and prosecutorial practices[3] cannot fairly be charged with the duty to safeguard against prosecutorial omissions when he in no manner manipulated the proceedings and merely entered a plea in due course.

Let a peremptory writ of prohibition issue directing respondent to vacate its order of September 20, 1984, in Los Angeles Superior Court case No. A 089760, entitled People v. Timothy Crayton, and to enter a new and different order granting defendant's motion to dismiss that action. Pending finality of this opinion, the stay issued by this court on November 26, 1984, shall remain in effect.

Because defendant has fully served the misdemeanor sentence imposed and is entitled to dismissal of the felony prosecution in which he appears to remain in custody, it is necessary that this opinion directing issuance of the peremptory writ be final as to this court immediately so as to prevent partial frustration of the relief granted.

Kingsley, J., and Arguelles, J., concurred.

---

[3]The People admit that the alleged deception would reflect a degree of sophistication which many criminals might not possess, but suggests that we speculate that this defendant is one who might be—or might have been well advised by—a "jailhouse lawyer." We decline to engage in such speculation as there is nothing in the record to support it.