[No. B180257. Second Dist., Div. Five. Dec. 14, 2005.]

THE PEOPLE, Plaintiff and Respondent, v.
ARMANDO HERNANDEZ, Defendant and Appellant.

**COUNSEL**

Athena Shudde, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Pamela C. Hamanaka, Assistant Attorney General, Jaime L. Fuster and Lance E. Winters, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**TURNER, P. J.**—Defendant, Armando Hernandez, appeals from: his December 3, 2004 guilty plea for voluntary manslaughter and his admission he used a deadly weapon (Penal Code §§ 192, subd. (a), 12022, subd. (b)(1)[1]); the trial court's subsequent finding defendant was not guilty by reason of insanity (§ 1026); and his ensuing December 27, 2004 commitment to the Department of Mental Health for placement in a state hospital. In this opinion, we address an aspect of the relationship between the determinate sentencing law and periods of confinement imposed on defendant who has twice been found not guilty by reason of insanity. This is a case where, had there been no insanity finding, defendant would have been subject to the determinate sentencing law. (§ 1170 et seq.) Defendant was twice found not guilty by reason of insanity for a single act of violence committed on a single occasion. In 2000 and later in 2004, defendant was committed to the state hospital pursuant to section 1026, subdivision (a). In late 2004, the trial court ordered the two commitments to run *concurrently*. As will be noted, because the two commitments arose out of a single act of violence directed at one victim, the trial court did not have the authority to impose concurrent periods of confinement in the state hospital.

Defendant beat the victim, Francisco Hernandez, over the head with a baseball bat on June 28, 2000. Mr. Hernandez was defendant's father. Defendant believed someone was trying to get into Mr. Hernandez's mind. A police officer described defendant's explanation for the attack: "He said that he had struck the victim with the bat. He said there was somebody in his head and he was trying to help him out." On November 15, 2000, in case No. BA204231, defendant pled "no contest" to assault with a deadly weapon (§ 245, subd. (a)(1)) and admitted the great bodily injury allegation. (§ 12022.7, subd. (a).) Then the trial court found, pursuant to section 1026, subdivision (a), that defendant was not sane at the time he committed the aggravated assault. The trial court committed defendant to the state hospital for a maximum term of commitment of seven years. The victim, Mr. Hernandez, remained comatose until his death on June 8, 2003. Mr. Hernandez's death was caused by the blunt force trauma inflicted by defendant on June 28, 2000.

On May 24, 2004, defendant was charged in an information with murder. The information was later amended to charge defendant with voluntary

---

[1] All future statutory references are to the Penal Code.

manslaughter (§ 192, subd. (a)) and personal deadly weapon use. (§ 12022, subd. (b)(1).) Defendant pled guilty to voluntary manslaughter and admitted the truth of the personal deadly weapon use allegation. Thereafter, on December 3, 2004, defendant was found once again to be insane at the time of the baseball bat beating of Mr. Hernandez pursuant to section 1026, subdivision (a). On December 27, 2004, defendant was committed to the state hospital to a maximum term of confinement of 11 years for voluntary manslaughter plus 1 year for the personal deadly weapon use pursuant to section 1026.5, subdivision (a)(1). The trial court accepted the prosecutor's argument that the November 15, 2000 previous commitment in case No. BA204231 for assault with a deadly weapon and great bodily injury infliction, stemming from the same attack on defendant's father, should be served *concurrently* with the present manslaughter commitment. Defense counsel argued that the aggravated assault "conviction" should be vacated. Defense counsel argued, "The 245 would be [an] inherent lesser of the 192 voluntary manslaughter." The trial court responded: "It seems to me that would be the case, too. What I would ask, maybe I can do this post-sentencing, if you have some authority that would ensure the court that that can be dismissed without any damage to the People's 192 voluntary manslaughter, I wouldn't have a problem with that because, practically speaking, it's not going to make one bit of difference. The manslaughter is going to be controlling and you could not have committed the manslaughter without having committed the 245(a)(1)." The prosecutor, Vivian Moreno, argued that if defendant wished to challenge the November 15, 2000 aggravated assault and deadly weapon commitment, it would have been necessary for him to have appealed then. The trial court invited further briefing on the issues but ruled that, in the meantime, the concurrent state hospital commitment would stand. No further proceedings ever occurred apart from the filing of the notice of appeal.

Defendant argues, "[T]he trial court's imposition of a concurrent term as to the prior conviction for assault with a deadly weapon in case number BA204231 was erroneous and such sentence should have been stayed under section 654."[2] The Attorney General argues that defendant's claim is not

---

[2] Section 654, subdivision (a) states: "An act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision. An acquittal or conviction and sentence under any one bars a prosecution for the same act or omission under any other."

properly before this court and, pursuant to section 669,[3] the concurrent state hospital commitment order was properly imposed. We agree with defendant. As will be noted, all of our analysis arises in the context of a case subject to the determinate sentencing law.

■ To begin with, although defendant has been found not guilty by reason of insanity, the determinate sentencing law is pertinent to the calculation of his maximum term of commitment in the state hospital. Section 1026.5, subdivision (a)(1), states in relevant part: "In the case of any person committed to a state hospital or other treatment facility pursuant to Section 1026 . . . the court shall state in the commitment order the maximum term of commitment, and the person may not be kept in actual custody longer than the maximum term of commitment . . . . For the purposes of this section, 'maximum term of commitment' shall mean the longest term of imprisonment which could have been imposed for the offense or offenses of which the person was convicted, including the upper term of the base offense and any additional terms for enhancements and consecutive sentences which could have been imposed less any applicable credits as defined by Section 2900.5, and disregarding any credits which could have been earned pursuant to Article 2.5 (commencing with Section 2930) of Chapter 7 of Title 1 of Part 3." In other words, section 1026.5, subdivision (a)(1), provides that a defendant found not guilty by reason of insanity is committed to the state hospital for a maximum term of commitment. That maximum term of commitment is equal to the longest term of imprisonment for the crimes which could have been imposed had the defendant been convicted *and* sentenced rather than found not guilty by reason of insanity. (*People v. Tilbury* (1991) 54 Cal.3d 56, 63 [284 Cal.Rptr. 288, 813 P.2d 1318]; *People v. Crosswhite* (2002) 101 Cal.App.4th 494, 501 [124 Cal.Rptr.2d 301].)

Prior to Mr. Hernandez's death, the maximum period of confinement was seven years. The trial court's November 15, 2000 commitment order in case No. BA204231, set defendant's maximum period of confinement at seven years. But pursuant to the trial court's December 27, 2004 concurrent periods

---

[3] Section 669 provides in pertinent part, "When any person is convicted of two or more crimes, whether in the same proceeding or court or in different proceedings or courts, and whether by judgment rendered by the same judge or by different judges, the second or other subsequent judgment upon which sentence is ordered to be executed shall direct whether the terms of imprisonment or any of them to which he or she is sentenced shall run concurrently or consecutively."

of confinement order, defendant remains subject to the November 15, 2000 seven-year period of confinement order; albeit the seven-year period is to run concurrently. Defendant asserts that he cannot still be subject to the November 15, 2000 commitment order, which set a seven-year maximum period of confinement.

■ In setting a section 1026.5, subdivision (a)(1) commitment, a trial court first determines what would be "longest term of imprisonment" which could have been imposed for the offense or offenses of which the defendant was convicted. This calculation includes the upper term of the base offense and any additional terms for enhancements and consecutive sentences which could have been imposed had there been no not guilty of reason of insanity finding. In other words, the trial court at first removes the not guilty by reason of insanity issue from the equation in calculating the maximum term of commitment to the state hospital. The trial court then calculates the maximum term under the determinate sentence law. In this case, on December 27, 2004, defendant was committed to the state hospital for 12 years following the not guilty by reason of insanity finding relative to the manslaughter with deadly weapon use plea and admission.

■ We agree with defendant that section 654, subdivision (a) is applicable to the calculation of the maximum term of commitment imposed in this case. In *People v. Smith* (1977) 70 Cal.App.3d 306, 316–317 [138 Cal.Rptr. 783], the defendant was an accomplice to a robbery, during which the proprietor of a store was shot by a codefendant. However, the proprietor did not die of his wounds until nine months later. In the interim, defendant pled guilty to robbery. After the victim's death, the defendant was charged and convicted of murder. The *Smith* court stayed the execution of the sentence as to the defendant's robbery conviction, explaining: "[Section 654] still prohibits multiple punishment under those circumstances [where the circumstances pertinent to the second proceeding were not susceptible of discovery]. Consequently, when the second conviction is obtained, section 654, by necessary implication authorizes the trial judge to modify the judgment in the first conviction in order to stay the execution of the sentence as to that conviction to avoid multiple punishment; such a modification is tantamount to an order after judgment resulting from a fortuitous circumstance arising after the first judgment was entered." (*Ibid.*; see also *People v. Crowder* (2000) 79 Cal.App.4th 1365, 1371 [94 Cal.Rptr.2d 633].) ■ In the present context no sentence is imposed as in *Smith*. Rather, defendant was committed to the state hospital. But in calculating the maximum period of confinement, the trial court computes the maximum sentence, then imposes that time

period as the maximum period of confinement pursuant to section 1026.5, subdivision (a)(1). Had there been no insanity findings, on December 27, 2004, the trial court could not order a concurrent sentence for the 2004 aggravated assault and great bodily injury matter and the 2004 manslaughter and deadly weapon use case. This is because, had there been no insanity finding, the trial court would have been obligated to stay the 2000 judgment pursuant to section 654, subdivision (a). (*People v. Smith, supra,* 70 Cal.App.3d at pp. 316–317; see *People v. Crowder, supra,* 79 Cal.App.4th at p. 1371.) But since there are insanity findings as to both the 2000 and 2004 cases, section 1026.5, subdivision (a)(1), defines the ability of the trial court to impose a period of confinement. Therefore, on December 27, 2004, in fixing the maximum period of confinement, the trial court could not impose a concurrent period of confinement as a result of the 2000 not guilty by reason of insanity finding in case No. BA204231.

 Three additional points are in order. First, of consequence to our analysis is the fact that nothing in any of the provisions applicable to insane defendants refers to concurrent periods of confinement. (§§ 1026 et seq., 1600 et seq.; see 5 Witkin & Epstein, Cal. Criminal Law (3d ed. 2000) § 677 et seq., p. 969 et seq.) Second, the Attorney General argues that a concurrent period of confinement could be imposed pursuant to section 669. We disagree. Section 669 is inapplicable to the outcome of this particular case. As noted, the trial court was required to stay the commitment in the 2000 matter pursuant to section 654, subdivision (a). If section 654, subdivision (a) requires that a sentence be stayed, then concurrent terms pursuant to section 669 may not be imposed. (*In re Adams* (1975) 14 Cal.3d 629, 636 [122 Cal.Rptr. 73, 536 P.2d 473]; *People v. Ratcliffe* (1981) 124 Cal.App.3d 808, 819 [177 Cal.Rptr. 627].) Third, there is no merit to the argument of the Attorney General that no action can be taken because the time to appeal the November 15, 2000 commitment has expired. If there were no insanity findings, under narrow circumstances such as this—the accused has been convicted of both a greater and lesser offense which arise out of single act of violence and the second case was filed solely because the victim died—courts retain jurisdiction to adjust a prior judgment. (*People v. Smith, supra,* 70 Cal.App.3d at pp. 316–317; see *People v. Crowder, supra,* 79 Cal.App.4th at p. 1371.) We see no reason to accept a different rule when the accused is found not guilty by reason of insanity on both occasions.

The trial court's December 27, 2004 concurrent period of confinement order is reversed. The seven-year commitment related to case No. BA204231 is stayed. If for any reason the order that defendant be committed to 12 years in the state hospital is set aside, the November 15, 2000 seven-year commitment will be reinstated. The judgment is affirmed in all other respects.

Mosk, J., and Kriegler, J., concurred.